**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| LEWIS D. WILLIS, | : | |
| | : | |
| Plaintiff | : | C.A. No.: 12-1232-RGA/MPT |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

Plaintiff, Lewis D. Willis ("plaintiff") appeals the decision of Michael J. Astrue, the

Commissioner of Social Security ("defendant"), denying his claim for Social Security

Disability Insurance Benefit ("DIB") under Title II of the Social Security Act ("Act").[1]

Currently before the court are the parties' cross-motions for summary judgment.[2]

### II.    Jurisdiction

A district court has the jurisdiction to review an administrative law judge's ("ALJ")

decision in a Title II DIB case once it becomes the final decision of the Commissioner.[3]

A decision of the Commissioner becomes final when the Appeals Council either affirms

---

[1] *See* 42 U.S.C. §§ 401-434.

[2] D.I. 10 (Plaintiff's motion for summary judgment); D.I. 12 (Defendant's cross-motion for summary judgment).

[3] 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.").

or denies review of an ALJ decision, or when a claimant fails to appeal the ALJ's decision within 60 days of an unfavorable ruling.[4]

Here, the ALJ's decision is the final decision of the Commissioner because the Appeals Council denied plaintiff's request for appeal.[5]  Therefore, this court has jurisdiction to review the ALJ's decision.

## III.   Procedural Background

On April 15, 2009, plaintiff filed a Title II application for a period of DIB, alleging his disability began February 22, 2009.[6]  The claim was initially denied on December 18, 2009,[7] and upon reconsideration on May 19, 2010.[8]  Thereafter, plaintiff filed a written request for an administrative hearing on July 14, 2010.[9]

On December 20, 2010, ALJ Judith Showalter held a video hearing to determine whether plaintiff was disabled under §§ 216(I) and 223(d) of the Act and to determine if the insured status requirements under the same sections were met.[10]  Plaintiff, represented by counsel, testified as to his disability.[11]  Also testifying at the hearing was Beth Kelly, an impartial vocational expert ("VE").[12]

After the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Act from February 22, 2009 to February 10, 2011, the date the opinion

---

[4] *See* 20 C.F.R. § 416.1455; *see also* 20 C.F.R. § 404.905.
[5] D.I. 8 at 1.
[6] *Id.* at 151.
[7] *Id.* at 88.
[8] *Id.* at 95.
[9] *Id.* at 101.
[10] *Id.* at 35-69 (transcript of oral hearing); *see* D.I. 105-06 (listing issues to be considered).
[11] *Id.* at 35-69.
[12] *Id.*

issued.[13]  The ALJ's decision became final when the Appeals Council denied plaintiff's request for review.[14]

## IV.    Factual Background

Plaintiff was 45 years old at the time of his alleged onset date of disability, February 22, 2009.[15]  By the time of the hearing, he was 47 years of age.[16]  Plaintiff has consistently alleged an inability to work due to shoulder impairments and degenerative disk disease of the lumbar spine.[17]

### Medical Evidence

Plaintiff is insured for disability benefits until June 30, 2014.[18]  Prior to the onset of his alleged disability, plaintiff worked as an electrician.[19]  The job of an electrician is a skilled position, and is generally performed at a medium level of exertion, but the VE testified plaintiff may have performed his job at a heavy exertion level, lifting more than 50 pounds on occasion.[20]

### A.    Back and Leg Pain and Treatment

In February 2008, plaintiff was seen by his treating physician, Dr. Robert Kopecki ("Kopecki"), for back and leg pain.[21]  Kopecki prescribed Oxycodone,[22] and also ordered

---

[13] *Id.* at 29.
[14] *Id.* at 1.
[15] *See id.* at 151.
[16] *Id.* at 40.
[17] *Id.* at 39.
[18] *Id.* at 23.
[19] *Id.* at 42.
[20] *Id.* at 64.
[21] *Id.* at 338.
[22] *Id.*

a MRI of plaintiff's lumbar spine which was performed on April 2, 2008.[23]  The physician

evaluating the MRI found dextroscoliosis, lower thoracic and diffuse lumbar disc

desiccation with annular bulge, and bilateral foraminal narrowing in plaintiff's spine.[24]  At

the follow-up visit after the MRI, Kopecki noted plaintiff complained of continued lower

back pain that radiated down his right leg.[25]  On May 30, 2008, Kopecki determined

plaintiff was a poor candidate for epidural injections as a result of his hemophilia.[26]

Kopecki later observed, on January 20, 2009, plaintiff was trying to work, but suffered

continued pain and walked with his back flexed.  His prescriptions for Oxycodone and

Oxycontin were refilled.[27]  Kopecki subsequently wrote a letter indicating plaintiff

suffered lower back and leg pain from a 2003 motor vehicle accident, and was a poor

candidate for surgery or injections due to hemophilia.[28]  As a result, Kopecki concluded

plaintiff could not sit for extended periods of time and favored long-term disability for

him.[29]

Plaintiff continued to report back pain throughout 2009 and Kopecki wrote

another letter, dated August 4, 2009, indicating plaintiff suffered a leg deformity due to a

motor vehicle accident, along with continued chronic back pain which prevents him from

sitting or standing for long periods of time and represents a permanent disability

precluding full-time work.[30]  Concomitantly, Kopecki completed a Multiple Impairment

---

[23] *Id.* at 260-61.
[24] *Id.* at 261.
[25] *Id.* at 337.
[26] *Id.* at 336.
[27] *Id.* at 333.
[28] *Id.* at
[29] *Id.*
[30] *Id.* at 519-20.

Questionnaire ("MIQ") where he diagnosed chronic lower back pain resulting from severe lumbar disc disease and leg pain due to the previous fracture.[31]  Kopecki also pointed out on the MIQ that plaintiff can only walk short distances and walks with his back flexed.[32]  Kopecki also opined plaintiff could only sit or stand for less than one hour at a time, occasionally lift up to 10 pounds, and was significantly limited in terms of repetitive reaching, handling, fingering, and lifting.[33]  Kopecki also noted plaintiff suffers fatigue and rated his pain as 7 out of 10.[34]  In addition, Kopecki indicated plaintiff would need unpredictable breaks every 10 minutes for 10-20 minutes, and would miss work more than 3 times per month.[35]  Plaintiff continued to report chronic back and leg pain; Kopecki noted tenderness and positive straight leg raising on October 21, 2009.[36]

### B.   Shoulder Pain and Treatment

On July 2, 2008, plaintiff complained of right shoulder pain.[37]  Kopecki ordered a MRI which revealed a Hill-Sachs type deformity and an irregularity of the superior labrum with a possible underlying superior labral tear.[38]  Plaintiff was evaluated by Dr. Brian Galinat ("Galinat") for his shoulder pain, who administered a subacromial injection and prescribed Ultram.[39]  Upon follow-up, plaintiff reported continued pain and consented to arthroscopic rotator cuff repair.[40]

---

[31] *Id.* at 523.
[32] *Id.*
[33] *Id.* at 525-26.
[34] *Id.* at 525, 528.
[35] *Id.* at 528-29.
[36] *Id.* at 515.
[37] *Id.* at 335.
[38] *Id.* at 258-59 (MRI performed November 10, 2008).
[39] *Id.* at 317.
[40] *Id.*

In advance of his shoulder surgery, plaintiff was examined by Dr. Philip Blatt ("Blatt") for evaluation of his hemophilia.[41]  Blatt noted plaintiff is a hemophiliac with hepatitis C and instructed him on pre-operative measures.[42]  On March 18, 2009, plaintiff underwent the shoulder procedure performed by Galinat.[43]  Upon follow-up, plaintiff continued to report shoulder pain and characterized it as worse than prior to the surgery.[44]  Galinat continued to prescribe narcotic pain medications until April 23, 2009 when he instructed plaintiff to only seek pain medication from his primary care physician because of issues with denial of prescriptions due to multiple prescribers.[45]  An X-ray performed on April 3, 2009 indicated continued Hill-Sachs deformity and separation due to widening of the acromioclavicular space.[46]  In an undated letter, faxed on September 9, 2010, Dr. Michael Lankiewicz reported plaintiff suffers from hemophilia B and recurrent bleeds in his shoulder joint making full-time work difficult.[47]

## V.   Administrative Law Hearing

### A.   Plaintiff's Testimony

At the hearing, plaintiff testified he was an electrician, but stopped working in February 2009,[48] due to his shoulder issues.  Plaintiff indicated his surgeon advised a shoulder replacement would be needed in the future because it was "bone on bone," but

---

[41] *Id.* at 395.
[42] *Id.* at 396.
[43] *Id.* at 321-22.
[44] *Id.* at 315-16.
[45] *Id.*
[46] *Id.* at 318.
[47] *Id.* at 553.
[48] *Id.* at 42.

it could not be performed for 10 years.[49]  Plaintiff then testified Kopecki told him such surgery could be performed now, but without health insurance, he could not afford the operation.[50]  Plaintiff noted his hemophilia also prevents surgical intervention due to bleeding risks.[51]  Plaintiff stated his back problems and left leg issues prevented return to work.[52]  Plaintiff further explained he missed substantial time from work of 4-5 days per month for 2-3 months prior to his onset date.[53]

According to plaintiff, after the March 2009 shoulder surgery, his shoulder is worse and requires a replacement.[54]  Due to pain, he takes Oxycodone, morphine and MS-Contin, as well as Celebrex for arthritis and Paxil for depression.[55]  Plaintiff characterized his shoulder pain as 5 out of 10 with medication and 10 without, which occurs daily, and causes limited range of motion.[56]  Plaintiff also testified a prior motorcycle accident in 2003 caused his original back injury and characterized his back pain as 5-6 out of 10 with medication and 10 or worse without, along with stiffness and occasional spasms.[57]

Plaintiff indicated having issues with using his right hand, but is able to button or zipper clothing, hold a knife, fork or spoon to eat, and hold a pen, but experiences pain when brushing his hair, and he uses his left hand for holding a phone or turning door

---

[49] *Id.* at 43, 45.
[50] *Id.* at 43.
[51] *Id.*
[52] *Id.* at 44.
[53] *Id.* at 60.
[54] *Id.* at 45.
[55] *Id.* at 45, 52.
[56] *Id.* at 46.
[57] *Id.* at 47-48, 51.

knobs.[58]  With respect to his hemophilia, he does not receive regular treatment or

medication; however if he suffers bleeding, either internally or externally due to an

injury, he requires Factor 9.[59]

With respect to medication side effects, plaintiff noted he experiences tiredness.[60]

He also cannot walk any distance nor walk or stand for more than two hours,[61] and can

only sit for less than an hour and lift up to 10 pounds.[62]  Plaintiff also indicated he has

memory issues, but is "pretty independent."[63]

As to daily activities, plaintiff testified to sleeping problems, but handles his

personal hygiene and certain chores, except those which require standing, such as

vacuuming or sweeping.[64]  His wife does the laundry and grocery shopping although he

accompanies her at times.  He spends most days watching television.[65]

Finally, plaintiff attested, consistent with Kopecki's recommendation, he uses a

cane for balance and back support.[66]  Plaintiff also explained he once changed spark

plugs, but does not normally engage in such work.[67]

B.      Vocational Expert's Testimony

---

[58] *Id.* at 49-50.
[59] *Id.* at 50.
[60] *Id.* at 53.
[61] *Id.* at 53-54.
[62] *Id.* at 54.
[63] *Id.* at 55.
[64] *Id.* at 56-57.
[65] *Id.* at 57, 59.
[66] *Id.* at 61-62.
[67] *Id.* at 63.

Beth Kelly ("Kelly"), a VE, testified at the hearing.[68]  Kelly stated plaintiff's employment as an electrician appeared to be at a heavy exertional level, although such work is typically of a medium exertional level.[69]  She indicated some of plaintiff's skills as an electrician are transferrable to "some light jobs."[70]  The ALJ proposed a hypothetical person similar to plaintiff, at the same age of onset, education, and suffering from the same disabilities including limitations on climbing ladders, ropes or scaffolds, pushing or pulling with the right arm, with no overhead work or exposure to extreme cold, and handling, fingering or feeling with the right hand restricted to frequent.[71]  Kelly testified there were several classes of assembler work such a hypothetical person could perform.[72]  Specifically, Kelly noted those jobs included:  (1) assemblers; (2) hand pickers; (3) production inspectors; (4) assemblers (sedentary); (5) inspectors; and (6) sorters, with numerous positions both regionally and nationally.[73]  Kelly also testified chronic absenteesim of three or more days per month would be unacceptable for those jobs.[74]

## VI.    ALJ's Findings

---

[68] *Id.* at 64.
[69] *Id.*
[70] *Id.*
[71] *Id.* at 65.
[72] *Id.*
[73] *Id.* at 65-66.
[74] *Id.* at 68.

After considering all of the evidence, the ALJ found plaintiff was not disabled within the meaning of the Act since February 22, 2009 and denied his claim.[75]  Her findings from her February 10, 2011 opinion are:[76]

1.  Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2014.

2.  Plaintiff has not engaged in substantial gainful activity since February 22, 2009.

3.  Plaintiff has the following severe impairments:  chronic right shoulder pain resulting from rotator cuff repair and chronic lower back pain associated with degenerative disc disease.

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the ALJ found plaintiff had the residual functional capacity ("RFC") to perform a range of light work as defined in 20 CFR 404.1567(b).  Plaintiff had the RFC to perform light work excluding climbing ladders, ropes, or scaffolding; pushing or pulling; overhead work with his dominant right arm; and exposure to extreme temperatures.  Further, plaintiff would be limited in terms of frequent handling, fingering, or feeling in the dominant right hand and would only be able to perform unskilled work due to medication side effects.

6.  Plaintiff is unable to perform any past relevant work (20 CFR 404.1565).

7.  Plaintiff was born April 2, 1963 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  Plaintiff has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

---

[75] *Id.* at 29.
[76] *Id.* at 23-29.

10

finding that plaintiff is "not disable," whether or not plaintiff has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform (20 CFR 404.1569 and 404.1569(a)).

11.     Plaintiff has not been under a disability, as defined in the Act, from February 22, 2009, through the date of the ALJ decision (20 CFR 404.1520(g)).

## VII.     Parties' Contentions

### A.     Plaintiff's Position

Plaintiff argues he is entitled to judgment in his favor.[77]  First, he asserts the ALJ failed to follow the treating physician rule by giving "little weight" to Kopecki's opinions without citing medical evidence contradicting his conclusions.[78]  Plaintiff also argues the ALJ erred by failing to support her opinion with substantial evidence,[79] and did not consider the factors in 20 C.F.R. § 404.1527(c)(2)-(6).[80]  He asserts the ALJ also erred by concluding, contrary to Kopecki's opinion, but consistent with plaintiff's testimony, he is able to care for his needs, and the level of treatment was inconsistent with the doctor's opinion.[81]  Instead, plaintiff argues the limited course of treatment is due to risks

---

[77] D.I. 10.

[78] D.I. 11 at 9, 12.

[79] *Id.* at 12-13; *see also* 20 C.F.R. § 404.1527(c)(2) (assigning "controlling weight" to a treating physician's opinion if supported by "medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence").

[80] *Id.* at 13; *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (detailing factors affecting weight to be given to medical opinions if not assigned "controlling weight" including:  (1) examining relationship; (2) treatment relationship including length and the nature and extent of the relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors).

[81] D.I. 11 at 10.

associated with hemophilia, not the severity of his conditions, and, as found by Kopecki, he cannot perform even sedentary work.[82]  Likewise, plaintiff propounds Kopecki's findings on standing, walking or sitting is based on a five-day work environment, and thus does not preclude performance of daily activities.[83]  Finally, plaintiff states the conclusion he can perform light work is not supported by substantial evidence since the ALJ did not provide specific objective findings, and may not substitute her own medical judgment for that of a medical professional, but must decide residual functional capacity ("RFC")[84] based on medical evidence and not her own credibility judgments.[85]

Plaintiff also argues the ALJ improperly evaluated his credibility.[86]  Specifically, he argues the ALJ violated 20 C.F.R. § 404.1529(c)(4) by analyzing his credibility against her own RFC rather than the evidence of record.[87]  Characterizing the ALJ's findings as vague and insufficient, plaintiff posits his lack of back treatment while undergoing shoulder surgery is unsurprising, and his ability to walk the short distance from his hospital room to a vehicle is irrelevant.[88]  Plaintiff also contends an absence of any planned surgery does not diminish his shoulder limitations.[89]  Thus, plaintiff asserts the ALJ's opinion on his credibility is unsupported by substantial evidence.

---

[82] *Id.* at 11.

[83] *Id.* at 11-12.  Plaintiff also cites cases from other courts to support the context of a five day work week in assessing work capacity.  *Id.* at 12.

[84] Residual function capacity is the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1).

[85] *Id.* at 13-14 (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Simmonds v. Astrue*, 872 F. Supp. 2d 351, 359 (D. Del. 2012)).

[86] D.I. 11 at 14.

[87] *Id.* at 15.

[88] *Id.* at 16.

[89] *Id.*

### B.    Defendant's Position

Defendant contends the ALJ complied with the regulations in considering both the weight attributed to Kopecki's testimony and plaintiff's credibility.[90]  Defendant argues RFC determinations are within the exclusive province of the ALJ, since they are administrative findings and not medical opinions.[91]  He also points out the ALJ supported her decision to give little weight to Kopecki's opinion by providing adequate reasons.[92]  Defendant quotes the ALJ's assessment of Kopecki's opinion on the basis of "an eight hour work day."[93]  Defendant also indicates the ALJ considered plaintiff's hemophilia, medication regimen and side effects, and Kopecki's relationship with plaintiff, which contradicts arguments that the ALJ failed to use substantial evidence or follow regulations in deciding the weight to accord Kopecki's opinion.[94]

With respect to plaintiff's credibility, defendant asserts this falls within the sole province the ALJ, who must only provide enough specificity for the reviewing court to determine the weight and basis for the weight accorded plaintiff's testimony.[95]  Defendant notes, contrary to plaintiff's argument, that the Third Circuit does not follow a specific ordered approach for determining the RFC, nor forbid assessing a claimant's statements against the ALJ's RFC determination.[96]  Defendant asserts the ALJ considered the record and provided reasons for her credibility determination, and

---

[90] D.I. 13 at 11, 13.
[91] *Id.* at 11 (citing *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[92] D.I. 13 at 11-12.
[93] *Id.* at 12.
[94] *Id.* at 13.
[95] *Id.* at 13-14.
[96] *Id.* at 14.

supported her findings by distinguishing inconsistencies in plaintiff's testimony with the objective medical record.[97]   Specifically, defendant refers to the absence of any evidence for shoulder replacement, plaintiff's healing after the shoulder procedure, and the lack of back treatment while undergoing shoulder treatment.[98]   Defendant notes the ALJ's consideration of MRI findings and plaintiff's ability to walk independently, as well as the lack of any evidence a cane was prescribed for assistance.[99]   Therefore, defendant argues the ALJ explained her credibility findings, her RFC and her determination of "very limited light duty work" with sufficient specificity.[100]

## VIII.   Standard of Review

### A.   Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[101]   If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[102]

This standard does not change merely because there are cross-motions for summary judgment.[103]   Cross-motions for summary judgment

---

[97] *Id.* at 15.

[98] *Id.* at 15-16.

[99] *Id.* at 16-17.

[100] *Id.* at 17.

[101] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

[102] *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).

[103] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[104]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[105]

Regarding Social Security Benefits matters, this court's review is limited to determining whether the final decision of the Commissioner is supported by substantial evidence.

Substantial evidence is less than preponderance but more than a mere scintilla. It is such relevant evidence as a reasonable mind would accept as adequate support for a conclusion. It must do more than create a suspicion of the existence of a fact to be established . . . it must be enough to justify, if the trial were put to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact to the jury.[106]

The Supreme Court has embraced a similar standard for determining summary judgment pursuant to FED. R. CIV. P. 56:

The inquiry performed is the threshold inquiry of determining whether there is a need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. If reasonable minds could differ as to the import of evidence, however, a verdict should not be directed.[107]

---

[104] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[105] *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).
[106] *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951).
[107] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (citation omitted).

Overall, this test is deferential, and we grant similar deference to agency inferences from facts if those inferences are supported by substantial evidence, "even [where] this court acting *de novo* might have reached a different conclusion."

Furthermore, evidence taken as a whole must be sufficient to support a conclusion by a reasonable person, not just the evidence consistent with the agency's decision.[108] Thus, a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is the evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes no evidence but a mere conclusion.[109]

## B.    Disability Determination Standard

### Five-Step Test

The Social Security Administration has established a five-step sequential

evaluation process for determining whether an individual is disabled.[110]

In step one the ALJ must determine if the claimant is engaged in any substantial gainful activity.  If a claimant is found to be engaged in any substantial gainful activity, the ALJ will find the claimant not disabled.[111]

In step two, the ALJ must determine if the claimant is suffering from a medically determinable impairment that is severe and meets the durational requirement.  A severe impairment is one that significantly limits a claimant's ability to do basic work activities.[112]  If the claimant does have a severe impairment, the analysis proceeds to the next step.

In step three, the ALJ determines if a claimant's impairments meets or medically equals the criteria of one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1.[113]  If the claimant's impairment meets or equals a listed impairment, the claimant is disabled.  If not, the analysis proceeds to the next step.

---

[108] *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986).
[109] *Id.*
[110] 20 C.F.R. § 404.1520(a).
[111] *Id.* at § 404.1520(b).
[112] *Id.* at § 404.1520(c).
[113] *Id.* at § 404.1520(d).

Before continuing to step four, if claimant's impairments do not meet or equal a listed impairment, the ALJ will assess the claimant's residual functional capacity, to be used in steps four and five.[114]

In step four, the ALJ compares the claimant's residual functional capacity to his past relevant work.  If a claimant can still perform past relevant work, then he is not disabled.[115]  If a claimant cannot perform past relevant work, the analysis proceeds to the last step.

In step five, the ALJ must consider the claimant's impairments, residual functional capacity, age, education, and work experience to determine if the claimant can perform other work.  Here the burden shifts to the ALJ to show that there are other jobs existing in significant numbers in the national economy which the claimant can perform.  The ALJ will often seek the assistance of a vocational expert at this fifth step.[116]

If the ALJ determines a claimant is disabled at any step in the sequence, the analysis ends.[117]

## IX.   Discussion

### A.   Weight Accorded Kopecki's Medical Opinion

Plaintiff argues the ALJ erred by assigning Kopecki's opinion little weight by failing to support this finding with substantial evidence or consider the required factors.  Plaintiff also argues the ALJ erred by substituting her own medical judgment and failing to rely on objective medical evidence in determining plaintiff's RFC.  Controlling weight is ordinarily assigned to a treating physician's opinion unless otherwise contradicted by substantial evidence.[118]  "When making a residual functional capacity determination, 'an ALJ may not reject pertinent or

---

[114] *Id.* at § 404.1520(e).
[115] *Id.* at § 404.1520(f).
[116] *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).
[117] *See* 20 C.F.R. § 404.1520(a).
[118] *Russo v. Astrue*, 421 Fed. App'x 184, 190 (3d Cir. 2011).

probative evidence without explanation.'"[119]  Further, an ALJ may assign weight based on the factors in 20 C.F.R. § 404.1527(c)(2)-(6).[120]

In the present case, the ALJ afforded little weight to Kopecki's medical opinion.[121]  In her decision, the ALJ pointed to a lack of objective medical evidence indicating severe impairment.[122]  The ALJ further noted an inconsistency between Kopecki's opinion that plaintiff may sit or stand for zero to one hour in an eight hour work day, and plaintiff's own testimony regarding his daily activities and abilities.[123]  The ALJ was also unconvinced that the level of treatment was consistent with a severe impairment of the nature alleged by Kopecki.[124]  In addition, the ALJ acknowledged Kopecki's status as plaintiff's primary care physician,[125] and that he had treated plaintiff since 2003.[126]  Thus, the ALJ properly considered all of the factors in 20 C.F.R. § 404.1527(c)(2)-(6) in determining the weight to accord Kopecki's opinion.  In assessing these factors, the ALJ likewise justified her determination by addressing a lack of support and inconsistencies in the underlying record, precisely the types of substantial

---

[119] *Id.*

[120] *Guido v. Astrue*, C.A. No. 11-686, 2012 WL 2403242, at *4 (W.D. Pa. June 26, 2012).

[121] D.I. 8 at 27.

[122] *Id.*

[123] *Id.*

[124] *Id.*  The ALJ discussed substantial portions of plaintiff's treatment history and assessed each doctor's evaluation.  Specifically, the ALJ noted the lack of hemophilia treatment except immediately prior to the should procedure, the decrease in back treatment during shoulder treatment, lack of scheduled surgery, and assessments of plaintiff's healing and range of motion.  *Id.* at 23-28.

[125] *Id.*

[126] *Id.* at 24.

evidence that would support her finding.  Specifically, the ALJ noted no medical evidence supported plaintiff's assertion his shoulder was "bone on bone" requiring a replacement and the lack of reference to his arm in Kopecki's opinion.[127]  As such, the ALJ did not err in affording Kopecki's opinion little weight.

Plaintiff mischaracterizes the ALJ's RFC finding, citing only to the page containing her conclusion.  Rather, the ALJ based her RFC finding on the same evidence used to evaluate Kopecki's opinion, namely plaintiff's treatment history, doctors' statements and records and plaintiff's own testimony.  Although the ALJ did not expound on the rationale for her decision *after* her conclusion, in light of her prior analysis, her determination was evidently based on plaintiff's testimony as to daily activities and objective medical findings, which provide sufficiently substantial evidence in support.

### B.    Determination of Plaintiff's Credibility

Plaintiff argues the ALJ erred by assessing his credibility against her own RFC determination.  Although she found plaintiff's impairments sufficient to cause his alleged symptoms, she found his statements with respect to "intensity, persistence and limiting effects" to be not credible.[128]  The Third Circuit does not reject an ALJ's finding with respect to a plaintiff's credibility when compared to the ALJ's RFC determination.[129]  Although plaintiff disputes the ALJ's findings

---

[127] *Id.* at 27.
[128] *Id.* at 26.
[129] *Russo*, 421 F. App'x at 190.

19

based on the evidence on which she relied, the fact that she referenced medical evidence and his testimony in assessing credibility renders her decision supported by substantial evidence.  The ALJ summarized plaintiff's testimony and treatment history in her findings, specifically, noting the reduction in plaintiff's back treatment throughout his shoulder treatment, his ability to walk immediately after shoulder surgery and subsequent healing of his incision, as well as noticeable conflicts between Kopecki's opinion and plaintiff's own statements regarding his daily activities and abilities.  The mere fact the ALJ referenced plaintiff's RFC in assessing his credibility serves as a reference to her other findings and the evidence in support of her decision.  Thus, plaintiff's argument is semantic, and the ALJ's decision is supported by substantial evidence.

## X.     Order and Recommended Disposition

Consistent with the findings contained in this Report and Recommendation,

IT IS RECOMMENDED that plaintiff's motion for summary judgment (D.I. 10) be DENIED, and defendant's motion for summary judgment (D.I. 12) be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(a) and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen days after being served with a copy of this Report and Recommendation.  The objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

March 14, 2014                    /s/ Mary Pat Thynge
                                 UNITED STATES MAGISTRATE JUDGE