## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

**Lewis D. Willis,**

Plaintiff;

v.

**Carolyn W. Colvin,**                                    Civil Action No. 12-1232-RGA

Acting Commissioner of Social Security,

Defendant.

MEMORANDUM OPINION

Gary W. Lipkin, Esq., Wilmington, DE, Attorney for Plaintiff.

Charles M. Oberly III, United States Attorney, Wilmington, DE; Patricia A. Stewart, Special
Assistant United States Attorney, Wilmington, DE, Attorneys for Defendant.

July 22, 2014

*Richard G. Andrews*
ANDREWS, U.S/District Judge:

Plaintiff, Lewis Duane Willis, appeals the decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security (the "Commissioner"), denying his application for Social Security disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). 42. U.S.C. §§ 401-434. This court has jurisdiction pursuant to 42 U.S.C. §405(g), which grants original jurisdiction to the District Courts to review a final decision of the Commissioner.

Presently pending before the Court are cross-motions for summary judgment filed by Willis and the Commissioner. (D.I. 10, 12). The case was referred to the United States Magistrate Judge, who issued a Report and Recommendation (D.I. 16) recommending that Willis' motion be denied and the Commissioner's motion be granted. Willis filed objections (D.I. 17) to which the Plaintiff has responded. (D.I. 18). I review the objections *de novo*. For the reasons set forth below, the Court grants Willis' motion, denies the Commissioner's motion, and remands for further proceedings.

## I.    BACKGROUND

### A.  Procedural History

Willis filed his application for DIB on April 15, 2009, alleging disability beginning on February 22, 2009, due to back pain and hemophilia. ("Transcript" (hereafter "Tr.") at 21)). Willis' application was initially denied and a video hearing was held before an Administrative Law Judge on December 20, 2010. (Tr. 21). The ALJ determined that Willis was not disabled in a decision dated February 10, 2011. (Tr. 21-29). Willis requested a review of the ALJ's decision on February 24, 2011. (Tr. 17, 220-25). The Appeals Council denied the Request for Review on August 3, 2012, making the ALJ's decision the Commissioner's final decision. (Tr. 1-5). Willis filed this lawsuit on October 1, 2012. (D.I. 1 at 1-3).

2

## B. Plaintiff's Medical History, Condition, and Treatment

At the time of the ALJ's decision, Willis was 47 years old and defined as a "younger person" under 20 CFR § 404.1563(c). (Tr. 21, 28). Willis has a high school education and has past relevant work experience as an electrician. (Tr. 21, 28, 178, 179, 182).

Willis' detailed medical history is contained in the record, but the Court will provide a brief summary of the pertinent evidence. Willis suffers from a herniated disc, hemophilia, back pain, left leg pain, and shoulder pain. (Tr. 177, 190). Willis' back and leg pain dates back to 2003 when he was injured in a motorcycle accident. (Tr. 262).

Willis has been treated for back, leg, and shoulder pain by his treating physician, Dr. Robert F. Kopecki, D.O., since 2005. (Tr. 262). On April 2, 2008, an MRI of Willis' lumbar spine showed dextroscoliosis, lower thoracic and diffuse lumbar disc dessication with annular bulge, and bilateral foraminal narrowing in the spine. (Tr. 260, 261). On July 2, 2008, Willis complained of right shoulder pain to Dr. Kopecki, who subsequently ordered an MRI which was performed on November 10, 2008. (Tr. 258, 335). The MRI of Willis' right shoulder indicated a Hills-Sach deformity and an irregularity of the superior labrum with a possible underlying superior labral tear. (Tr. 258-59). On March 18, 2009, Dr. Brian J. Galinat, M.D., whom Willis had been seeing for his shoulder pain since November 2008, performed an arthroscopic rotator cuff repair and extensive debridement on Willis. (Tr. 321-22). In April 2009, during a follow-up to his shoulder procedure, Willis reported continued shoulder pain, describing it as worse than before the surgery. (Tr. 315).

In a May 2009 letter, Dr. Kopecki noted that Willis' hemophilia would make any surgery or epidural injection risky. (Tr. 262). Further, Dr. Kopecki noted that he favored long-term disability for Dr. Kopecki. (Tr. 262). In August 2009, Dr. Kopecki wrote another letter indicating that Willis' back pain had worsened. (Tr. 519). Dr. Kopecki also determined that Willis' disability was

3

permanent and that he could not perform full time work. (Tr. 520). During this time, Dr. Kopecki completed a multiple impairment questionnaire ("MIQ") dated August 4, 2009. (Tr. 523-30). In the MIQ, Dr. Kopecki diagnosed Willis with chronic lower back pain resulting from severe lumbar disc disease and leg pain due to the 2003 motorcycle accident. (Tr. 523). Dr. Kopecki limited Willis' activity to 0-1 hours of sitting, standing, or walking, and occasional lifting and carrying up to 10lbs. (Tr. 525, 526).

## C. ALJ Decision

The core of the ALJ's analysis consists of a little more than two pages of text. (Tr. 25-28). It is useful to summarize the factual component of that analysis.

The ALJ determined that Willis' residual functional capacity ("RFC") included a range of light work with limitations of various descriptions. (Tr. 25). The ALJ summarized Willis' claimed limitations and his description of his daily activities. (Tr. 26). The only inconsistency she noted was that he claimed "he has to use a cane," but that she did not see him doing so during the hearing,[1] and the record does not show a prescription for one. (Tr. 26). His statements about pain and his limitations, to the extent they exceeded the ALJ's RFC determination, were rejected as "not credible." (Tr. 26). The ALJ described medical records relating to Willis' "back impairment." (Tr. 26). She noted that treatment for the back declined as treatment for the shoulder increased. (Tr. 26). She noted that after shoulder surgery, he was able to walk out of the hospital.[2] (Tr. 27). The ALJ described an Office Note of a treating neurosurgeon on October 17, 2008, stating that his low back pain had become "so bad that he cannot work." (Tr. 27; *see* Tr. 257). The ALJ noted that Willis had worked after this statement (the claim alleges the onset of disability in February 2009),

---

[1] The ALJ was in Dover. Willis was in New Castle. The hearing was by video. The ALJ does not say that Willis did not have a cane with him, and did not ask about it.

[2] Earlier, the ALJ had noted Willis' testimony that "he does not like to walk too much." (Tr. 26). Thus, it is not clear that being able to walk off the hospital floor is relevant to anything.

and had not then received treatment, and thus "[gave] the statement little weight." (Tr. 27). The

ALJ described Willis' assertion that he cannot work due to right shoulder pain. (Tr. 27). The ALJ

noted that an MRI showed "many deformities" in the right shoulder. (Tr. 27).[3] The ALJ noted that

on December 21, 2009, Dr. Kopecki recorded that Willis "looked great, but he was still

complaining of a lot [of] pain, but reported doing well with current medications." (Tr. 27). The

ALJ also noted that Willis told Dr. Kopecki that he was "[t]old by ortho he needs total shoulder

replacement." (Tr. 27, referring to 29F/6). The ALJ pointed out that there were no medical records

from an orthopedist stating that his shoulder was "bone on bone" or that he needed future surgery.

(Tr. 27). The ALJ noted that Dr. Kopecki opined that Willis was disabled[4] because low back and

left lower extremity pain prevented him from sitting for "long periods of time" without "great

pain." (Tr. 27, referring to 4F/1). The ALJ gave the "not able to sit long periods of time" opinion

"little weight" because the "medical records do not show the level of treatment that would indicate

that [Willis's] impairments are so severe as to interfere with [his] ability to sit for long periods of

time." (Tr. 27).[5] The ALJ noted that Dr. Kopecki's MIQ referred to low back pain, lower left

extremity pain, but not to Willis's right arm. (Tr. 27). Dr. Kopecki's opinion that Willis is only

"capable of sitting and standing zero to one hour in an eight hour work day" was entitled "little to

no weight" because Willis testified at the hearing that he was "able to care for his own needs;" the

ALJ concluded that Dr. Kopecki was "in sympathy for his patient and [ignoring] his actual medical

condition." (Tr. 27). The ALJ gave "little weight" to a limitation from the Christina Spine Center

---

[3] The ALJ refers to a visit with the pain level "2" but the cited Exhibit (27F/2) does not support the ALJ's statement. It appears that the ALJ is referring to an entry in Exhibit 29F/6 for March 23, 2010, which reads, "Having severe [right] shoulder [,] having trouble raising arm upward. Back pain unchanged." A little later there is the number "2" with some medical abbreviations about which I am unsure, but it seems hard to believe that Willis described "severe pain" as 2 on a scale of 10.
[4] Disability is a decision reserved to the Commissioner, and the ALJ did not have to defer to the disability conclusion.
[5] There does not seem to have been any state agency physician examinations or review of records. Thus, the ALJ's conclusion about the appropriate level of treatment for severe back pain appears to be based on her own medical judgment.

5

in May 2008 about his lifting capabilities because it was before treatment, the claimed disability onset date, and there were internal inconsistencies. (Tr. 27). The ALJ concluded that the RFC determination was "supported by the testimony of the claimant's day to day activities and the objective medical findings in the record." (Tr. 28).

## II.    LEGAL STANDARD

### A.  Standard of Review

The District Court, upon objections being made to the Magistrate Judge's Report and Recommendation in a social security disability proceeding, will undertake a *de novo* review of the recommendations to which the objection(s) was made. *See* 42 U.S.C. § 636(b)(1)(B); *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). This review requires the Court to re-examine all the relevant evidence in deciding whether to uphold or reverse the Commissioner's finding. *See id.* The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. § 405(g); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d

6

Cir. 2011). "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (citations omitted).

The Third Circuit has explained that a:

> single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. evidence offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 143 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## B. Disability Determination Process

Title II of the Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). To qualify for DIB, the claimant must establish that he or she was disabled prior to the date he or she was last insured. *See* 20 C.F.R. § 404.131; *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990). A "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A). A claimant is disabled "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which

7

exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. § 404.1520; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 404.1520(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in a substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. If the claimant is not suffering from a severe impairment or a severe combination of impairments, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(e).

At step three, if the claimant's impairments are severe, the Commissioner compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *Plummer*, 186 F.3d at 428. If a claimant's impairment of its medical equivalent matches an impairment in the listing, then the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments or impairment combination are not listed or medically equivalent to any listing, then the analysis continues to steps four and five. *See* 20 C.F.R. § 404.1520(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his

8

or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citations omitted). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is able to return to her past relevant work, the claimant is not disabled. *See id.*

If the claimant is unable to return to past relevant work, step five requires the Commissioner to determine whether the impairments preclude the claimant from adjusting to any other available work. *See* 20 C.F.R. § 404.1520(g) (mandating "not disabled" finding if claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

## III. DISCUSSION

Willis makes three primary arguments in his objections. First, Willis argues that the ALJ erred by failing to follow the treating physician rule by not giving Dr. Kopecki's medical opinions the proper controlling weight. Second, Willis argues that the ALJ's RFC determination is not supported by substantial evidence. Third, Willis argues that the ALJ erred by failing to properly evaluate his credibility.

### A. The ALJ Erred in Failing to Follow the Treating Physician Rule.

9

Willis first argues that the ALJ erred by failing to give controlling weight to Dr. Kopecki's medical opinions. (D.I. 17 at 1). Pursuant to 20 C.F.R. § 404.1527(d)(2), a treating source's opinion on the nature and severity of the claimant's impairment will be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Further, "while the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence she rejects and her reason(s) for discounting that evidence." *Fargnoli,* 247 F.3d at 43 (citing *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000)).

In discounting Dr. Kopecki's medical opinions, the ALJ cited the lack of objective medical evidence to support the opinions contained in Dr. Kopecki's treatment notes and letters, the discrepancy between the level of treatment rendered and purported severity of Willis' shoulder and back pain, and the inconsistency between Dr. Kopecki's MIQ, specifically regarding Willis' capacity for sitting and standing, and Willis' testimony concerning his daily activities.

The ALJ improperly rejected Dr. Kopecki's treatment notes by failing to follow established guidelines regarding the assessment of treating physicians' opinions. "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2010) (citing *Plummer*, 186 F.3d 422, 429); *see also* 20 C.F.R. § 404.1527(d)(2). Dr. Kopecki has treated Willis for back, leg, and shoulder pain since 2005. (Tr. 262). Controlling weight should have been given to Dr. Kopecki's opinion since it is supported by medically acceptable clinical and diagnostic techniques. Dr. Kopecki's treatment notes revealed that his opinions were based on physical examinations of Willis, Willis' MRI results, and Willis' subjective

10

complaints. (Tr. 542-47). The ALJ referenced the lack of notes from an orthopedist in assigning

little weight to Dr. Kopecki's medical opinions. (Tr. 27). However, this omission neither

contradicts Dr. Kopecki's medical opinions nor does it indicate that Dr. Kopecki's clinical

examinations are less than medically acceptable.

The ALJ also found the level of treatment rendered to be inconsistent with Dr. Kopecki's

assessment regarding the severity of Willis' shoulder and back pain. However, the record provides

evidence supporting Willis' explanation for why he failed to obtain certain treatment. For instance,

Dr. Kopecki opined that Willis would be a poor candidate for epidural injections or surgery

because of hemophilia. (Tr. 262). Willis' lack of surgical treatment therefore cannot reasonably be

considered contradictory medical evidence. There is a reasonable explanation for the lack of

surgical treatment, which no medical professional has questioned. For reasons not provided in her

assessment, the ALJ has failed to account for these considerations in her decision. In finding an

inconsistency between the level of treatment and Willis' medical symptoms, the ALJ improperly

relied on her own subjective opinions and medical judgment and substituted them for the treating

physician's expert judgment.

The ALJ's findings also note an inconsistency between Willis' testimony regarding his

daily activities and the conclusions asserted in Dr. Kopecki's MIQ. (Tr. 27, 525). Dr. Kopecki's

MIQ has internal inconsistencies. On the one hand, Dr. Kopecki checked the box that Willis was

capable of sitting and standing zero to one hour in an eight-hour work day. (Tr. 28, 525). On the

other hand, he also indicated that Willis was capable of sitting for 20 minutes, with a 5-10 minute

break before he can sit again. (Tr. 525-26). It may be that the zero-to-one hour of sitting and

standing in an eight-hour day is inconsistent with Willis' description of his daily activities, even

though it is pretty close to Willis' testimony (up to one hour for each, or two at most, Tr. 54) and

11

Willis' major daily activity (watching television) can be done lying down. Thus, while the ALJ had substantial evidence to discount the zero-to-one hour sitting and standing limitation, this one inconsistency alone is insufficient to assign all of Dr. Kopecki's medical opinions little weight. For all the reasons above, the ALJ erred in not giving Dr. Kopecki's other opinions controlling weight.

### B. The ALJ's RFC determination was not supported by substantial evidence.

In determining an individual's RFC, the ALJ must consider all relevant evidence. *See Fargnoli*, 247 F.3d at 41; *see also* 20 C.F.R. §§ 404.1527(c)(2), 404.1545(a). "That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.2d at 41 (citing 20 C.F.R. § 404.1545(a)). The ALJ's RFC finding must be accompanied by a clear and satisfactory explanation. *See id.* Willis asserts that the ALJ impermissibly substituted her "own credibility judgments, speculation or lay opinion" in making her RFC determination. (D.I. 17 at 7). He argues that the ALJ failed to cite any valid medical opinions or other persuasive evidence to support her RFC assessment. (*Id.*).

The ALJ's RFC assessment is not supported by substantial evidence. In determining that Willis had the RFC to perform a range of light work, the ALJ indicated that she relied on the testimony of the claimant's daily activities and the objective medical findings in the record. (Tr. 28). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). The ALJ cited no medical opinions in support of her RFC determination. The only medical opinions to which she referred were ones to which she gave either little or no weight. (Tr. 228, 256, 526).[6] The only other

---

[6] Dr. Kopecki's MIQ indicated that Willis could occasionally lift up to 10 pounds, and would have significant limitations in repetitive lifting. Dr. Kim's medical evaluation provided a 15 pound lifting restriction and an order for

evidence discussing Willis' lifting capacity is Willis' testimony indicating that he can lift a maximum of 10 pounds, and would have trouble doing so repetitively. (Tr. 52, 62). He can use a phone, a toothbrush, open a car door, and drive a car. (Tr. 50). None of this supports the ALJ's RFC determination. The medical evidence from Dr. Kopecki was that he could "never" lift 10 to 20 pounds, and could "occasionally" lift 0 to 10 pounds. (Tr. 526). Even assuming that the ALJ had good grounds to discount the treating physician's statement, which I doubt, there is no substantial evidence supporting the ALJ's conclusion. The "objective medical findings" that supported the RFC determination were not further described, and the ALJ's opinion gives no guidance as to what they might be.

## C. Credibility

Whether the ALJ improperly evaluated Willis' credibility need not be addressed. As noted above, the ALJ erred by failing to follow the treating physician rule and in assessing Willis' RFC. Thus, as the case will be remanded, the ALJ will need to assess anew Willis' credibility based on a record as it exists at the time.

## IV. Conclusion

For the reasons discussed above, the Plaintiff's Motion for Summary Judgment is granted; the Commissioner's Motion for Summary Judgment is denied. The matter will be remanded for proceedings consistent with this opinion. A separate order will be entered.

---

no lifting. The ALJ's logically-supported reasons for discounting Dr. Kim's opinion were: (1) the restriction was placed prior to Willis receiving treatment; and (2) the two notes were inconsistent.